Slip Op. 01-127

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| FORMER EMPLOYEES OF<br>BARRY CALLEBAUT | : | |
| Plaintiff, | : | |
| v. | : | Before: WALLACH, Judge<br>Court No.: 00-05-00202 |
| HERMAN, UNITED STATES<br>SECRETARY OF LABOR, | : | **PUBLIC VERSION** |
| Defendant. | : | |

[Remand Determination remanded for further investigation.]    Decided: November 2, 2001

Coudert Brothers (Steven H. Becker, Scott D. Schauf, and Paul A. Horowitz), New York, NY, for Plaintiffs.

Stuart E. Schiffer, Acting Assistant Attorney General; David M. Cohen, Director; Velta A. Melnbrencis, Assistant Director, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, (Franklin E. White, Jr.), Washington, D.C., for Defendant.

**OPINION**

**I**

**INTRODUCTION**

This case is before the court following the United States Department of Labor's ("Labor" or the "Department") voluntary remand of January 31, 2001. Plaintiffs, Former Employees of Barry Callebaut ("Former Employees") filed petitions for transitional adjustment assistance ("TAA") and NAFTA transitional adjustment assistance ("NAFTA TAA"). Following the voluntary remand, Labor denied Plaintiffs' eligibility for both programs. Barry Callebaut USA,

Incorporated, Van Leer Division, Jersey City, New Jersey; Notice of Negative Determination on Remand ("Remand Determination"), 66 Fed. Reg. 18116 (Dep't Labor, Apr. 5, 2001). For the reasons set forth below, the Remand Determination is remanded to Labor for further investigation.


## II

## BACKGROUND

Barry Callebaut Van Leer Division (the "plant") was a manufacturing plant in Jersey City, New Jersey, which produced finished chocolate products and related ingredients. See Plaintiffs' Comments on Defendant's Negative Determination on Remand ("Plaintiffs' Comments") at 4 (listing the products as including, but not limited to, cocoa butter, chocolate liquor, sugar-free chocolate and chocolate snaps). The plant began laying off employees in late Spring 1999 and closed in April 2000. See id. at 4-5.


On July 9, 1999, employees who were slated for lay off applied for TAA, claiming that their previous employer Van Leer was bought by Barry Callebaut (the "company"), and that Barry Callebaut was shifting production to Canada, resulting in their separations. Confidential Administrative Record at 5; see also Plaintiffs' Comments at 5; Investigations Regarding Certifications of Eligibility to Apply for Worker Adjustment Assistance, 64 Fed. Reg. 65728 (Dep't Labor, Nov. 23, 1999).

On August 12, 1999, after having been laid off, the employees filed a petition for NAFTA TAA. They claimed that the lay offs resulted from shifts in production to and imports from Canada. Administrative Record - Business Confidential Information Supplemental ("Adm. Rec. I") at 1; see also Plaintiffs' Comments at 5; Investigations Regarding Certifications of Eligibility to Apply For NAFTA Transitional Adjustment Assistance, 64 Fed. Reg. 55757 (Dep't Labor, Oct. 14, 1999).

Labor initiated an investigation in which it sent a NAFTA TAA Confidential Data Request Questionnaire ("NAFTA TAA Questionnaire") to Barry Callebaut. See Plaintiffs' Comments at 5. It obtained questionnaire responses dated October 15, 1999, from the company's Human Resources Manager. Adm Rec. I at 8-14; see Plaintiffs' Comments at 5; Defendant's Memorandum in Opposition to Plaintiffs' Comments on Defendant's Negative Determination on Remand ("Defendant's Response") at 3. In its response, the company stated that there was no recent decline in production or increase in imports, and that no shift of production to Canada was planned. Adm Rec. I at 9; see Plaintiffs' Comments at 6; Defendant's Response at 3. Two weeks later, on October 25, 1999, in response to Labor's inquiry about a decline in production at the plant, the company said that production was being shifted to other domestic plants. Adm Rec. I at 16-17; see Plaintiffs' Comments at 6; Defendant's Response at 4.

Labor relied upon the company's unverified questionnaire responses in denying the petitions for TAA and NAFTA TAA. Adm Rec. I at 18-22; see Plaintiffs' Comments at 6-7; Defendant's Response at 4; see also Notice of Determinations Regarding Eligibility to Apply for

3

Worker Adjustment Assistance and NAFTA Transitional Adjustment Assistance, 64 Fed. Reg. 72690, 72691 (Dep't Labor, Dec. 28, 1999) (stating that the TAA claim was denied for failure to meet the criterion of an "increase[] of imports of articles like or directly competitive with articles produced by the firm or appropriate subdivision hav[ing] contributed importantly to the separations".); Notice of Determinations Regarding Eligibility To Apply for Worker Adjustment Assistance and NAFTA Transitional Adjustment Assistance, 65 Fed. Reg. 5690, 5691 (Dept' Labor, Feb. 4, 2000) (stating that the NAFTA TAA claim was denied because "[i]mports from Canada or Mexico did not contribute importantly to workers' separations. There was no shift in production from the subject firm to Canada or Mexico during the relevant period.").

On January 13, 2000, one of the Former Employees, Robert Bloom, requested that Labor reconsider its negative determination. He claimed that 30% or more of production from the plant had been shifted or was in the process of being shifted to Canada, and that equipment was being dismantled and sent to Canada. Adm Rec. I at 40-41; Plaintiffs' Comments at 7. Labor granted his request. Barry Callebaut, USA, Incorporated Van Leer Division Jersey City, New Jersey; Notice of Affirmative Determination Regarding Application for Reconsideration, 65 Fed. Reg. 5690 (Dep't Labor, Feb. 4, 2000).

The Department then initiated a second investigation. It sent a letter on January 24, 2000, to the Human Resources Manager requesting additional information. Adm Rec. I at 46-47. The letter laid out Plaintiffs' claims as made in the request for reconsideration. Labor's first question was, "We ask that you respond to the petitioners claims." Id. at 46. In its February 16, 2000,

4

submission, the company did not respond to this question.  Id. at 51.  The remaining questions related to production shifts to and imports from Canada and other foreign countries.  Id. at 46-47.  Labor stated that "[t]he company has responded that it expects to shift some production from Jersey City to Canada in the near future, but to date, no shift has occurred."  Barry Callebaut USA, Incorporated, Van Leer Division, Jersey City, New Jersey; Notice of Negative Determination on Reconsideration ("Reconsideration Determination"), 65 Fed. Reg. 13991 (Dep't Labor, Mar. 15, 2000).   The company stated that it "did not import any chocolate products or ingredients from Canada" and that "except for cocoa powder, the company did not import any chocolate product or ingredients from any other foreign country."  Defendant's Response at 7.  This information, like the information from the first investigation, was sent by the Human Resources Manager.  See id.  Without verifying his response, Labor affirmed its negative determination.  See id.; Reconsideration Determination, 65 Fed. Reg. at 13991.

Mr. Bloom then filed this suit on behalf of the Former Employees.  After Defendant answered, Plaintiffs filed a Motion for Judgment on the Agency Record.  In response, Defendant filed a Motion for a Voluntary Remand "for the purpose of allowing the agency to conduct an additional investigation and to make a redetermination as to whether petitioners qualify for certification for" TAA and/or NAFTA TAA.  Defendant's Motion for Voluntary Remand at 2.

Labor then initiated a third investigation.  On February 12, 2001, it requested detailed information from the Accounting Manager of Barry Callebaut, USA, Inc. regarding the organizational structure of the company; the products produced at the Jersey City plant; where

5

production and machinery were shifted once the plant closed; sales, production and imports for each product produced; and the plant's major customers.[1] Adm Rec. II at 3. Labor also asked the company to "provide comments or documentation that would contradict the Department's negative determination" as to worker eligibility. Id. at 4. Labor's request was forwarded to Ms. Isabelle Eysseric, who appears to be the company Spokesperson,[2] and she responded on February 26, 2001.[3] According to a chart she submitted, only [a very small percentage] of the Jersey City plant's production was transferred to the plant at St. Hyacinthe, Quebec, Canada. Id. at 41. The submission indicates that all other production was transferred to other domestic plants. Id.

Based upon the unverified information provided by Ms. Eysseric, Labor found that "[a] negligible amount of" production of products formerly produced at the plant "was shifted to Canada." Remand Determination. The three ingredient products produced at the Jersey City plant were chocolate liquor, cocoa butter and cocoa cake. Supplemental Confidential Administrative Record at 42. Labor found that imports of chocolate liquor were negligible,

---

[1]In its letter requesting additional information, Labor stated that it asked for the remand "so that [it] could satisfy the inadequacies of the [earlier] investigation. Adm Rec. II at 2.

[2]Ms. Eysseric's title is not specified in the record. However, in the table of contents to the remand record provided by Defendant, Ms. Eysseric is referred to as Spokesperson.

[3]Labor also contacted Mr. Woody Forns, the former Chief Financial Officer for Van Leer and the company contact person listed on the original petition. See Remand Determination. By the time Labor contacted him in this third investigation, Mr. Forns had been separated from the company for "about two years". Adm Rec. II at 51. The memorandum on the record memorializing the certifying officer's conversation with him states that Mr. Forns indicated that "only a small percentage" of chocolate and ingredient production from the Jersey City plant was transferred to Canada, but that the cocoa press and the production for which it is used "probably went to Canada". Id. Labor characterized the information provided by Mr. Forns as not new. Remand Determination.

purchases of chocolate cake increased but domestic production also increased significantly, and imports of cocoa butter accounted for a "negligible portion of the company's domestic needs." Remand Determination. The finished products made at the plant were chocolate, sugar-free chocolate and chocolate snaps, and the Department found that the "vast majority" of production of these items "was shifted to other Barry Callebaut domestic locations." Id. Based on these findings, Labor affirmed its previous determinations and denied the petitions for TAA and NAFTA TAA. Id.

The Motion presently before the court followed. Plaintiffs challenge the denials of their petitions, claiming that Labor conducted an inadequate investigation. Plaintiffs' Comments at 1-2. They argue that Labor failed to "perform a reasoned analysis" of the record evidence, failed to inquire into contradictory information in the record, and "reached material conclusions for which there is no supporting evidence in the administrative record". Id.

### III

### JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction under 28 U.S.C. § 1581(d) (1994). This case is governed by 19 U.S.C. § 2272 (1994) and 19 U.S.C. § 2395 (1994). 19 U.S.C. § 2272 provides for separated workers to petition for TAA. 19 U.S.C. § 2272 (1994). 19 U.S.C. § 2395 provides for the petitioning by displaced workers for NAFTA TAA and judicial review of Labor's determination on such petitions. 19 U.S.C. § 2395 (1994). That section also provides that the court, "for good cause shown . . . may remand the case to [Labor] to take further evidence." Id. "Good cause

exists if the Secretary's chosen methodology is so marred that his finding is arbitrary or of such a nature that it could not be based on substantial evidence." Former Employees of Linden Apparel Corp. v. United States, 13 CIT 467, 469, 715 F. Supp 378, 381 (CIT 1989) (citations and internal punctuation omitted).

"A negative determination by the Secretary of Labor denying certification of eligibility for [TAA] will be upheld if it is supported by substantial evidence on the record and is otherwise in accordance with law." Former Employees of Swiss Ind. Abrasives v. United States, 17 CIT 945, 947, 830 F. Supp 637, 639 (1993); see also 19 U.S.C. § 2395(b) (1994). Substantial evidence is something more than a "mere scintilla," and must be enough evidence to reasonably support a conclusion. Primary Steel, Inc. v. United States, 17 CIT 1080, 1085, 834 F. Supp. 1374, 1380 (1993); Ceramica Regiomontana, S.A. v. United States, 10 CIT 399, 405, 636 F. Supp. 961, 966 (1986), aff'd, 810 F.2d 1137 (Fed. Cir. 1987).

**IV**

**ANALYSIS**

**A**

**Labor Erred in Accepting Barry Callebaut's Unverified Questionnaire Response Because it Failed to Analyze Contradictory Evidence That Suggested the Company's Response Was Less Than Truthful.**

Plaintiffs claim that although Labor conducted three investigations on this matter, "it still has failed to produce substantial evidence that would support denial of Plaintiffs' claims for certification." Plaintiffs' Comments at 13. "Labor's investigation [on remand] did not meet the

8

threshold requirement of reasonable inquiry", Plaintiffs claim, because "Labor blindly accepted, without any verification or follow-up, the scant information provided by [Barry Callebaut]." Id.

Defendant claims that "[i]t is entirely appropriate for the Secretary of Labor to accept – without verification – statements received from company officials when nothing in the record suggests that the information provided is inaccurate or unreliable." Defendant's Response at 12. In support of its contention, Defendant cites Local 167, Int'l Molder and Allied Workers' Union, AFL-CIO v. Marshall, 643 F.2d 26 (1st Cir. 1981). In Local 167, the court upheld Labor's negative TAA determination which was based largely on an unverified statement from the subject company. The plaintiff argued that accepting the statement was an abuse of discretion. In upholding Labor's determination, the court stated that

> We cannot say, however, that the Secretary has shirked his duty to investigate by accepting as credible an authoritative company response to an official query given under a guarantee of confidentiality. The duty of verification proposed by petitioner, which is applicable to customer surveys generally, would greatly increase the investigative burden of the Department of Labor. We note that there are not objective circumstances in this case suggesting that the company gave a less than truthful response, nor does it appear that the company would have financially benefitted from the denial of certification. It was for the Secretary to decide, under these circumstances, whether to credit the Crane Company statement without further checking.

Local 167, 643 F.2d at 31-32 (emphasis added).

Local 167 does not support the Government's position that it did not need to verify the information provided by Barry Callebaut. Information that Labor should have considered suggested that the company's figures were less than truthful.

9

In responding to Labor's questionnaire on February 26, 2001, Barry Callebaut submitted a chart titled "Ex-Van Leer Items – Allocation of Production Per Site Since the Close of Van Leer Factory". The chart, which covers the period of April 17, 2000 to January 27, 2001, lists four factories as producing 100% of the former Van Leer volume. The factories [producing a proportion of chocolate and ingredients are:]

St. Hyacinthe, Quebec, Canada – [a proportion]%
St. Albans, Vermont, USA – [a proportion]%
Pennsauken, New Jersey, USA – [a proportion]%
Piscataway, New Jersey, USA – [a proportion]%

Adm Rec. II at 41. Based on this information provided by the company, in the Remand Determination, Labor found that production of only a "negligible amount" of the articles produced at the Jersey City plant was moved to Canada. Remand Determination.

However, the company's 1999 Annual Report indicates that far more than [a very small percentage] of Van Leer production was moved from Jersey City to Canada. In the Report, Barry Callebaut stated in its Letter From the Management that it had implemented changes to increase efficiency. "An example of efficiency improvements within our Group is the transfer of the higher cost Van Leer U.S. production to more cost-efficient sites in Pennsauken (USA) and St. Hyacinthe (Canada). As a result, the Van Leer factory has been closed." Barry Callebaut, Inc., 1999 Annual Report at 9 ("Annual Report").

The chart provided by the company and its Annual Report appear to be at odds. If the Pennsauken plant took over [the bulk] of the Jersey City plant's production, and St. Albans took

over [an additional amount greater than St. Hyacinthe], then the question arises, why does the Annual Report list St. Hyacinthe, with only [a very small percentage] of the production, and not St. Albans? The statement in the Annual Report appears intended to show where the production has gone once the Jersey City plant closed. The fact that the company listed St. Hyacinthe implies that it and the Pennsauken plant took over the major portion of production. If indeed the St. Hyacinthe plant only took over [a very small percentage] of production, and the St. Albans plant took over [a greater percentage than St. Hyacinthe], it would seem only logical that the Annual Report would list St. Albans and not St. Hyacinthe. Alternatively, the Annual Report would list all four plants. In any case, the apparent discrepancy between the Annual Report and the submission to Labor suggests that the company was less than truthful in its submission.[4]

---

[4]If the company was truthful in its submission to the Department, then it appears that it may have been untruthful in its Annual Report. If upon remand, Labor finds that [the production figure specified for St. Hyacinthe] is the accurate figure, Labor is directed to refer this matter to the Securities and Exchange Commission for investigation into whether a misrepresentation was made to shareholders in the Annual Report.

The Securities and Exchange Commission requires publicly traded companies to file annual reports. 17 C.F.R. § 240.13a-1 (2001). Making a material misrepresentation of fact or materially misleading statement in an annual report to shareholders results in issuer liability. 17 C.F.R. § 240.3b-6(d) (2001) (titled "Liability for Certain Statements By Issuers" and stating that a fraudulent statement is one "which is an untrue statement of a material fact, a statement false or misleading with respect to any material fact, an omission to state a material fact necessary to make a statement not misleading . . . ."); 17 C.F.R. § 240.3b-6(b) (2001) (applying subsection (d) to annual reports to shareholders); 17 C.F.R. § 240.14a-3 (2001) (detailing requirements of annual report); 17 C.F.R. § 240.10b-5 (2001) (it is unlawful to "make any untrue statement of material fact . . . in connection with the purchase or sale of any security."); 17 C.F.R. § 240.12b-20 (2001) (requiring a company to include in a statement or report "further material information, if any, as may be necessary to make the required statements, in the light of the circumstances under which they are made not misleading."); see also Securities & Exchange Commission v. General Refractories Co., 400 F. Supp. 1248, 1257 (D.D.C., 1975) ("Investors are entitled to disclosure of material facts. . . . The Commission has made a prima facie showing that annual reports and proxy materials filed with the Commission and disseminated to . . . shareholders were false and misleading and did not contain information required to be contained therein.").

The Department having failed to analyze the Annual Report and investigate the apparent discrepancies between it and Barry Callebaut's submission to Labor, the court finds good cause to remand this determination to Labor. The Department's acceptance of the unverified information provided by the company, despite the contradictory evidence presented, renders the Remand Determination unsupported by substantial evidence. This matter is remanded to Labor for further investigation into the amount of production which was moved from Jersey City, New Jersey, USA to St. Hyacinthe, Quebec, Canada. Following the factual investigation, Labor is to reevaluate whether sufficient production was relocated to Canada to satisfy the requirements of TAA and NAFTA TAA.

**B**

**The De Minimis Rule Applies to 19 U.S.C. § 2331 Because to Exempt the NAFTA TAA Program from the De Minimis Rule Would Thwart the Purpose of the Program.**

Plaintiffs claim that even if Labor is correct and only [a very small percentage] of production was shifted to Canada, the workers should have been certified eligible for NAFTA TAA. Plaintiffs' Comments at 20. 19 U.S.C. § 2331, which sets forth the eligibility requirements for NAFTA TAA, states in relevant part:

> (a) Group eligibility requirements
> > (1) Criteria
> > A group of workers . . . shall be certified as eligible to apply for adjustment assistance under this subpart . . . if the Secretary determines that a significant number or proportion of the workers in such workers' firm . . . have become totally or partially separated, or are threatened to become totally or partially separated, and either–
> > > (A) that–
> > > > (i) the sales or production, or both, of such firm or subdivision have decreased absolutely,

12

> (ii) imports from Mexico or Canada of articles like or directly competitive with articles produced by such firm or subdivision have increased, and
> (iii) the increase in imports under clause (ii) contributed importantly to such workers' separation or threat of separation and to the decline in the sales or production of such firm or subdivision; or
> (B) that there has been a shift in production by such workers' firm or subdivision to Mexico or Canada of articles like or directly competitive with articles which are produced by the firm or subdivision.

19 U.S.C. § 2331 (1994).

Plaintiffs argue that "[t]he statute, which is clear and unambiguous, directs Labor, without qualification, to certify the workers if it determines that there has been a shift in production to Canada of articles like or directly competitive with articles that are produced by the workers' firm in the United States." Plaintiffs' Comments at 20. In other words, "[n]o minimum level [of shifted production] is required." Id.

Plaintiffs' argument "ignores the fact that the venerable maxim de minimis non curat lex ('the law cares not for trifles') is part of the established background of legal principles against which all enactments are adopted, and which all enactments (absent contrary indication) are deemed to accept." Wisconsin Department of Revenue v. William Wrigley, Jr., Co., 505 U.S. 214, 231 (1992). "Application of de minimis is particularly important in cases . . . where stark, all-or-nothing operation of the statutory language would have results contrary to its underlying purposes." Alcan Aluminum Corporation v. United States, 165 F.3d 898, 903 (Fed. Cir. 1999).

13

The legislative history behind NAFTA TAA shows that the program is intended to benefit displaced workers whose separations were caused by shifts in production to or imports from Canada or Mexico.  See  H.R. Rep. No. 103-361(I) at 4 (1993), *reprinted in* 1993 U.S.C.C.A.N. 2552, 2554 ("Title V establishes a NAFTA transitional adjustment assistance program of comprehensive benefits, including training and income support, for workers who may be laid off <u>due to</u> increased U.S. imports from Mexico or Canada or a shift of production to Mexico or Canada, and authorizes State self-employment assistance programs.") (emphasis added).  The program is not intended to benefit workers whose separations were not <u>caused</u> by shifts in production to or imports from Canada or Mexico, despite the fact that <u>some</u> production may have been shifted or imports may have increased to some degree.[5]

If courts do not apply the de minimis rule to the NAFTA TAA program, Labor will be required to certify workers eligible for NAFTA TAA in situations where no causal link can be made between the production shift and the separations.  As this would clearly circumvent the purpose of NAFTA TAA, Plaintiffs' argument fails.

---

[5]The court notes that Congress requires a "<u>significant</u> number or proportion of the workers" be displaced in order for them to be eligible for NAFTA TAA. 19 U.S.C. § 233a (a)(1); H.R. Rep. No. 103-361(I) at 88 (1993), *reprinted in* U.S.C.C.A.N. 2552, 2638.  On its face this requirement indicates that Congress requires something more than one worker being displaced. As to this aspect of the statute, Congress has adopted, or at the very least has implicitly not rejected, the de minimis principle.  This requirement supports the conclusion that Congress also adopts, or does not reject, the de minimis principle as to the other condition for NAFTA TAA, that production be shifted to Canada or Mexico.

## C

**Should Labor Not Perform a Competent and Verified Investigation upon Remand, the Court Will Not Remand for a Fifth Investigation.**

Plaintiffs argue that "Labor has now had three opportunities to perform a proper investigation – and have failed each time." Plaintiffs' Comments at 13-14. Therefore, they argue that "further remand would . . . be futile" and that "the Court should order Labor to certify the plaintiffs as eligible for trade adjustment assistance." Id. at 14.

Plaintiffs rely on Former Employees of Hawkins Oil and Gas, Inc. v. United States Secretary of Labor, 17 CIT 126, 814 F. Supp. 1111 (1993). Plaintiffs' Comments at 14, 20. In that case, Labor had conducted three investigations on the petitions for trade adjustment assistance. The court found that the investigations were inadequate. In ordering the Secretary to certify the workers, the court stated that "Labor has repeatedly ignored the Court's instructions to conduct a more thorough investigation. After three tries the record continues to be scant and Labor has once again failed to substantiate its conclusions. Thus, ordering another remand in this case would be futile." Hawkins Oil, 17 CIT at 130, 814 F. Supp. at 1115.

Plaintiffs' argument has merit. In its three opportunities, Labor has failed to conduct adequate investigations in this case. However, the court finds that remand with instructions from the court is appropriate. Labor is instructed to conduct a competent and thorough investigation, and given the evidence that Barry Callebaut has been less than truthful in its responses to Labor questionnaires, the Department must verify the company's responses. Obtaining a sworn

15

statement from the company official who prepares the responses to Labor's questions is not sufficient verification. Labor's failure to conduct an adequate investigation in accordance with these instructions will be taken as indicative that the Department does not care to perform its duties competently, and the court will not remand for a fifth investigation.

## V

## CONCLUSION

This matter is remanded to Labor for further investigation and consideration of the amount of production shifted to Canada from the United States. Specifically, Labor is instructed to investigate the claims made in the chart titled "Ex-Van Leer Items – Allocation of Production Per Site Since the Close of Van Leer Factory", submitted to Labor by Barry Callebaut, and how they conflict with the statements made in the Annual Report. As noted above, should the Department find that the statement made in the chart is truthful, it is instructed to refer this matter to the Securities and Exchange Commission.

_____
Evan J. Wallach, Judge

Date:   November 2, 2001
        New York, New York

16