Slip Op. 02 - 74

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - - - - - x

FORMER EMPLOYEES OF GALEY & LORD      :
INDUSTRIES, INC.,
                                      :
                   Plaintiffs,
                                      :
             v.                          Court No. 01-00130
                                      :

ELAINE L. CHAO, UNITED STATES         :
SECRETARY OF LABOR,
                                      :
                   Defendant.
- - - - - - - - - - - - - - - - - - - x


Memorandum

[Upon appeal from the denial of certification
 of eligibility to apply for trade adjustment
 assistance, judgment for the defendant.]


Decided:  July 30, 2002


    Buckley & Klein, LLP (Edward D. Buckley) for the plaintiffs.

    Robert D. McCallum, Jr., Assistant Attorney General; David M. Cohen, Director, and Lucius B. Lau, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Delfa Castillo); and Office of the Solicitor, Division of Employment & Training Legal Service, U.S. Department of Labor (Jay Reddy), of counsel, for the defendant.


        AQUILINO, Judge:  This action arises out of two current, pervasive and yet different American phenomena, namely, the discontinuance of domestic manufacturing and displacement of workers therein, and the reliance on the *Internet* even for matters formerly composed with greater care.  In this instance, upon reception of an amorphous transmittal on or about April 9, 2001,

and consistent with established practice, the Clerk of this Court of International Trade deemed the content thereof to be a timely appeal from a denial by the U.S. Department of Labor's Employment and Training Administration ("ETA") of a petition on behalf of employees "engaged in yarn manufacturing at Galey & Lord Ind., Inc. plant in Shannon, Georgia"[1] for certification of eligibility to apply for trade adjustment assistance. See ETA, Notice of Determinations Regarding Eligibility To Apply for Worker Adjustment Assistance and NAFTA Transitional Adjustment Assistance, 66 Fed.Reg. 9,599 (No. TA-W-38,376) (Feb. 8, 2001).

I

That petition was filed on ETA Form 8650 for assistance under the Trade Act of 1974, as amended, 19 U.S.C. §2271 et seq. It pointed to Galey & Lord product(s) described as

> [c]otton and cotton blended carded and combed yarns used
> in the production of cotton and cotton blended fabrics,
> primarily twills and poplins[2,]

and reported related worker separations totalling 120 and 480 on November 20 and 27, 2000, respectively. See AR, p. 2. The petition concluded with the following averment:

---

[1] Plaintiffs' packet contains materials which include apparent facsimiles of reports on Forms 8-K and 10-K filed in 2001 with the Securities and Exchange Commission in the name of Galey & Lord, Inc., while defendant's administrative record ("AR"), such as it is and which has been filed herein, references plaintiffs' erstwhile employer as Galey & Lord *Industries*, Inc.

Insofar as this decision is concerned, the court assumes this corporate-name discrepancy is not of moment.

[2] AR, p. 2.

> During the last several years there has been a signifi-
> cant increase in the quantity of yarn imports into the
> U.S. in the categories (300 - Carded Yarns, 301 - Combed
> Yarns) produced at the Shannon, Georgia facility.  At the
> same time, there have been equally significant increases
> in the importing of the fabrics for which these yarns are
> used (Categories 317 - Cotton Twills and 314 - Cotton
> Poplin and Broadcloth).  The continued growth of imported
> yarns and fabrics in the U.S. market has resulted in
> significant downward pressure on the price of those
> products realized by the Company which has resulted in
> the erosion of profit margins.
>
> The factors; continued growth of imports in the U.S.
> market, negative pricing pressure and profit erosion with
> no prospect for change in the trend have made any
> significant capital investment for modernization im-
> practical.  The result is the closure of the previously
> identified yarn manufacturing operations.

Id. at 3.

Plaintiffs' packet of papers now part of the court's case file contains a letter to one of the displaced Galey & Lord employees from the Georgia Department of Labor that refers to "pursuing other options that may be of assistance to the workers laid off", as well as a copy of a petition on ETA Form 9042 for NAFTA Transitional Adjustment Assistance filled out by hand in the name of that and two other employees presumably similarly situated and bearing the scribbled date April 6, 2001, or just before this action commenced.

Above-named counsel then formally appeared in this action on behalf of the plaintiffs, whereupon traditional give-and-take ensued between the parties as to scheduling and also whether or not the Form 9042 had been forwarded to the Governor of Georgia, as

contemplated by 19 U.S.C. §2331(b)(1), and, if so, whether he had timely notified the defendant thereof, as is required by section 2331(b)(2)(A). In any event, their interchange was followed by defendant's Consent Motion for Remand to the Department of Labor for Reconsideration, which was granted.

The results of that remand have been filed herein, and the plaintiffs present a formal response. Defendant's reply thereto prays for judicial affirmance of its negative determination(s) of eligibility for adjustment assistance and for dismissal of this action.

The court's jurisdiction to grant such relief is pursuant to 19 U.S.C. §2395 and 28 U.S.C. §§ 1581(d)(1), 2631(d)(1).

II

Under the Trade Act of 1974, as amended, the Secretary of Labor shall certify workers as eligible to apply for adjustment assistance if she determines

(1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,

(2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and

(3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.

19 U.S.C. §2272(a).  Subsection 2272(b)(1) defines "contributed im-portantly" to mean "a cause which is important but not necessarily more important than any other cause."

On this statute's face, and as reaffirmed by the courts, all three of the foregoing requirements must be satisfied by petitioners for assistance.  See, e.g., Int'l Union, United Automobile, Aerospace & Agricultural Implement Workers of America v. United States, 22 CIT 712, 713, 20 F.Supp.2d 1288, 1290 (1998). In reviewing ETA determinations,

> the findings of fact by the Secretary of Labor. . ., if supported by substantial evidence, shall be conclusive; but the court, for good cause shown, may remand the case to such Secretary to take further evidence . . ..

19 U.S.C. §2395(b).  See 28 U.S.C. §2640(c).  See also Former Employees of Shaw Pipe, Inc. v. United States, 21 CIT 1282, 1284, 988 F.Supp. 588, 590 (1997) (such determinations must be in ac-cordance with law).  "Substantial evidence . . . must be enough reasonably to support a conclusion".  Ceramica Regiomontana, S.A. v. United States, 10 CIT 399, 405, 636 F.Supp. 961, 966 (1986), aff'd, 810 F.2d 1137 (Fed.Cir. 1987), citing Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938);  Matsushita Elec. Indus. Co. v. United States, 750 F.2d 927, 933 (Fed.Cir. 1984).  "Good cause [to remand] exists if the Secretary's chosen methodology is so marred that his finding is arbitrary or of such a nature that it could not be based on substantial evidence". Former Employees of Barry Callebaut v. United States, 25 CIT ___, _____, 177 F.Supp.2d

1304, 1308 (2001), citing <u>Former Employees of Linden Apparel Corp.</u>
<u>v. United States</u>, 13 CIT 467, 469, 715 F.Supp. 378, 381 (1989),
quoting <u>United Glass & Ceramic Workers of North America, AFL-CIO v.</u>
<u>Marshall</u>, 584 F.2d 398, 405 (D.C.Cir. 1978).  But, in general, "the
nature and extent of the investigation are matters resting properly
within the sound discretion of the administrative officials".
<u>Former Employees of CSX Oil & Gas Corp. v. United States</u>, 13 CIT
645, 651, 720 F.Supp. 1002, 1008 (1989), quoting <u>Cherlin v.</u>
<u>Donovan</u>, 7 CIT 158, 162, 585 F.Supp. 644, 647 (1984).

A

The ETA's initial negative determination herein states
that its investigation of the facts and circumstances of plain-
tiffs' lost jobs revealed that the criteria of 19 U.S.C. §2272(a)-
(3), <u>supra</u>, were not met because

> [t]he yarn produced by the workers at the subject firm
> was produced for internal consumption in the company's
> manufacturing process.  Galey & Lord did not import yarn
> in the time period relevant to the investigation.

AR, p. 35.  <u>See</u> 66 Fed.Reg. at 9,599.  Upon reconsideration after
the court-ordered remand, the ETA affirmed its original notice,
denying eligibility to apply for adjustment assistance for the
plaintiffs.  That affirmance reports, in sum and substance:

> On remand, the Department contacted officials of
> Galey & Lord to obtain clarification of the production
> and employment data provided with respect to the worker
> group in Shannon, Georgia.  Although workers at the plant
> produced yarn and fabric, the petition was filed by a
> company official on behalf the [*sic*] workers at the plant
> producing yarn.  The information obtained . . . on
> remand[] show [*sic*] that the production data provided for

1998 through November 2000[] was [*sic*] specifically for yarn production.  The employment data provided by the subject firm for that same time period was [*sic*] for all workers at the Shannon . . . plant.  The workers are separately identifiable between yarn and fabric production.

Other findings on remand show that the company imported insignificant quantities of yarn and fabric during the time period relevant to the investigation. Those imports were for evaluation purposes only and were not imported on a sustained basis.

Supplemental AR, pp. 4-5.

Plaintiffs' counsel are seemingly unable to take exception to this determination, predicated as it is upon 19 U.S.C. §2272(a)(3), supra.  See Plaintiffs' Response to the Department of Labor's Redetermination Upon Remand passim.  Indeed, there is enough evidence on the record to reasonably support it.  The record indicates, for example, that Galey & Lord was seeking to maximize efficiency and assure long-term profitability by closing the yarn operation and modernizing its remaining weaving division.  The production of yarn was to be outsourced to Parkdale Mills Inc., a North Carolina-, as opposed to foreign-, based company, enabling Galey & Lord to acquire yarn as needed at lower cost.  Money saved by the closing was for purchase of "state-of-the-art looms for the weaving operation."  AR, p. 5.  Moreover, the yarn that had been produced by the displaced workers was not for the open market; it was consumed by Galey & Lord itself in manufacturing fabrics. Thus, that yarn was not in direct competition with the imports. See, e.g., Former Employees of Hewlett-Packard Co. v. United States, 17 CIT 980, 985-86 (1993) (ETA exercise of its discretion

sustained when it determined that the causal nexus required by the statute not satisfied by the mere presence of imports in U.S. market).

                                    B

        The essence of the response interposed by counsel to defendant's remand results is that

>    [c]ertification should be granted to the former employees
>    of Galey & Lord under the NAFTA amendment to the Trade
>    Act of 1974, 19 U.S.C. §2331.  It is noteworthy that cer-
>    tification was granted under NAFTA-TAA for workers from
>    a Galey & Lord plant in Eagle Pass, Texas due to a shift
>    in production to Mexico (NAFTA No. 2966).  In the instant
>    case, under 19 U.S.C. §2331(1)(iii) [*sic*], there has been
>    a shift in production by Galey & Lord to Mexico of
>    articles like or directly competitive with articles which
>    were produced by the yarn workers who are Petitioners
>    herein.  Galey & Lord admits as much in the papers it has
>    filed with the Department of Labor.  Consequently, its
>    former yarn workers are entitled to receive Transitional
>    Adjustment Assistance.

Plaintiffs' Response, pp. 6-7.

        This court cannot concur.  Section 2331 of Title 19, U.S.C. is the codification of the NAFTA Worker Security Act adopted by Congress as Subtitle A of Title V of the North American Free Trade Agreement Implementation Act, Pub. L. No. 103-182, 107 Stat. 2057, 2149-54 (Dec. 8, 1993).  That subtitle added the NAFTA Transitional Adjustment Assistance Program to Title II, Chapter 2 of the Trade Act of 1974, Pub. L. 93-618, 88 Stat. 1978, 2019-30 (Jan. 3, 1975).  Part of that program was to add a subsection (t) to section 3306 of the Internal Revenue Code, defining "self-employment assistance program" to encompass, among other things,

individuals who "are eligible to receive regular unemployment compensation . . . under State law"[3] and who "are participating in self-employment assistance activities which . . . are approved by the State agency"[4].  Congress further provided therein that such program "meet[] such other requirements as the Secretary of Labor determines to be appropriate."  26 U.S.C. §3306(t)(6).  In sum, the road to NAFTA transitional adjustment assistant begins in particular displaced workers' home states, before connecting to Washington, to wit:

### (b) Preliminary findings and basic assistance

#### (1) Filing of petitions

A petition for certification of eligibility to apply for adjustment assistance under this subpart may be filed by a group of workers . . . with the Governor of the State in which such workers' firm or subdivision thereof is located.

#### (2) Findings and assistance

Upon receipt of a petition under paragraph (1), the Governor shall- -

**(A)** notify the Secretary [of Labor] that the Governor has received the petition;

**(B)** within 10 days after receiving the petition- -

**(i)** make a preliminary finding as to whether the petition meets the criteria described in subsection (a)(1) of this section (and for purposes of this clause the criteria described under subparagraph (A)(iii) of such subsection shall be disregarded), and

---

[3] 26 U.S.C. §3306(t)(3)(A).

[4] 26 U.S.C. §3306(t)(3)(C).

   **(ii)** transmit the petition, together with a statement of the finding under clause (i) and reasons therefor, to the Secretary for action under subsection (c) of this section; and

   **(C)** if the preliminary finding under subparagraph (B)(i) is affirmative, ensure that rapid response and basic readjustment services authorized under other Federal law are made available to the workers.

**(c) Review of petitions by Secretary; certifications**

  **(1) In general**

  The Secretary, within 30 days after receiving a petition under subsection (b) of this section, shall determine whether the petition meets the criteria described in subsection (a)(1) of this section.  Upon a determination that the petition meets such criteria, the Secretary shall issue to workers covered by the petition a certification of eligibility to apply for assistance described in subsection (d) of this section.

  **(2) Denial of certification**

  Upon denial of certification with respect to a petition under paragraph (1), the Secretary shall review the petition in accordance with the requirements of subpart A of this part to determine if the workers may be certified under such subpart.

19 U.S.C. §2331(b) and (c).


Notwithstanding the existence in plaintiffs' packet of the copy of the handwritten petition for such transitional adjustment assistance on ETA Form 9042, which may have been engendered by the March 21, 2001 letter from the Georgia Department of Labor at the behest of that state's Governor, the record at bar does not show either that the petition was ever duly presented (returned) to the Governor in accordance with the foregoing statute or that he

timely carried out his responsibilities thereunder, including transmitting the petition to the defendant Secretary for action. In fact, given the date on that petition (April 6, 2001), and of plaintiffs' packet herein (April 9), that petition may well have bypassed both Atlanta and Washington on its way to this court in New York.  Clearly, that would not have been the right routing, but plaintiffs' counsel have not responded in a different direction to government queries on this issue[5].

Of course, careful preparation and delivery of such a petition for assistance in accordance with law is of critical importance, in particular given the magnitude of the dislocations the statute seeks to redress.  Lawful presentment and processing of the ETA Form 9042 in this action, however, probably would not have engendered different analysis on the merits.  While a preliminary finding by the Governor under 19 U.S.C. §2331(b)(2)(B)(i), supra, shall disregard the criteria of section 2331(a)(1)(A)(iii), regarding imports from Mexico or Canada, upon his referral of the petition to the ETA, that agency cannot disregard those criteria per section 2331(c)(1), supra, and, if its determination under that paragraph (c)(1) is negative, the ETA shall review, per paragraph (c)(2), the petition in accordance with 19 U.S.C. §§ 2271-75.

---

[5] Compare Defendant's Consent Motion for an Extension of Time to Request a Voluntary Remand or Reply to Plaintiffs' Response to Labor's Negative Determination, pp. 1-2 (March 14, 2002) and Defendant's Motion for an Extension of Time to Reply to Plaintiffs' Response to Labor's Negative Determination, pp. 1-2 (April 4, 2002) with Defendant's Reply to Plaintiffs' Response, pp. 3 n. 2, 7-11 (April 18, 2002).

While that subpart A of this Trade Act is not restricted to imports
from the two NAFTA partners of the United States, the criteria of
19 U.S.C. §2272(a), supra, are defined similarly to those of
section 2331(a)(1), e.g., "increase[s] of [in] imports . . . con-
tributed importantly to such . . . separation . . . and to . . .
decline in sales or production."  Indeed, the controlling defini-
tion of "contributed importantly" in 19 U.S.C. §2272(b)(1), supra,
is *in haec verba* that of subsection 2331(a)(2).  Hence, the same
analytical approach to a petition on an ETA Form 9042 for NAFTA
transitional adjustment assistance, presented with care and
processed on the record developed herein, probably would not have
resulted in a determination different from the agency's negative
determination(s) under section 2272.

### III

        In view of the foregoing, defendant's negative determina-
tion(s) regarding eligibility to apply for trade adjustment
assistance must be affirmed and this action dismissed.  Judgment
will enter accordingly.

Decided:  New York, New York
          July 30, 2002

                                    _____
                                               Judge