FORMER EMPLOYEES OF BARRY
CALLEBAUT, Plaintiff–Appellee,

v.

Elaine CHAO, Secretary of Labor,
Defendant–Appellant.

No. 03–1113.

United States Court of Appeals,
Federal Circuit.

Feb. 10, 2004.

Suzanne I. Offerman, Coudert Brothers
LLP, of New York, NY, argued for plain-
tiff-appellee. With her on the brief were
Steven H. Becker and Paul A. Horowitz.

Patricia M. McCarthy, Attorney, Com-
mercial Litigation Branch, Civil Division,

United States Department of Justice, of Washington, DC, argued for defendant-appellant. On the brief were David M. Cohen, Director; Franklin E. White, Jr., Assistant Director; and James L. Anderson, Trial Attorney.

Before LOURIE, Circuit Judge, PLAGER, Senior Circuit Judge, and CLEVENGER, Circuit Judge.

LOURIE, Circuit Judge.

The Secretary of Labor appeals from the decision of the United States Court of International Trade holding that the decision of the Department of Labor ("Labor") in *Barry Callebaut USA, Incorporated, Van Leer Division, Jersey City, New Jersey, TA–W–37,000 and NAFTA–3402; Notice of Negative Determination on Remand* (Dep't of Labor Mar. 4, 2002) (*"Fourth Negative Determination"*), regarding the eligibility of certain former employees of Barry Callebaut USA, Inc. ("Callebaut") for Transitional Adjustment Assistance ("TAA") and North American Free Trade Agreement TAA ("NAFTA–TAA") benefits, was not supported by substantial evidence; and requiring the Secretary to certify the plaintiff former employ-

ees for the requested TAA and NAFTA–TAA benefits. *Former Employees of Barry Callebaut v. Herman, U.S. Sec'y of Labor,* 240 F.Supp.2d 1214 (Ct. Int'l Trade Aug. 30, 2002) (*"Fmr.Empls.II"*). Because we conclude that Labor's *Fourth Negative Determination* was supported by substantial evidence, we reverse the decision of the Court of International Trade.

## BACKGROUND

Callebaut, a Swiss company, purchased Van Leer Corp., a chocolate manufacturing plant in Jersey City, New Jersey, in 1998. In June 1999, Callebaut began downsizing the Van Leer plant, and in April 2000 closed the plant altogether. *Former Employees of Barry Callebaut v. Herman, U.S. Sec'y of Labor,* 177 F.Supp.2d 1304, 1306 (Ct. Int'l Trade Nov. 2, 2001) (*"Fmr.Empls.I"*).

In July and August 1999, respectively, a group of former Van Leer employees (the "Former Employees") petitioned Labor under 19 U.S.C. §§ 2271(a) and 2331(b) for certification for TAA and NAFTA–TAA benefits under 19 U.S.C. §§ 2272 and 2331(a), respectively, alleging that their job losses resulted from a shift of production to Canada.[1] *Id.* Labor questioned

---

1. At the time of the Former Employees' petition, § 2272 stated, in relevant part, that:

    (a) The Secretary shall certify a group of workers ... as eligible to apply for adjustment assistance ... if he determines—
    (1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,
    (2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and
    (3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation,

or threat thereof, and to such decline in sales or production.
19 U.S.C. § 2272 (2000). Similarly, § 2331(a) stated, in relevant part, that:
    A group of workers ... shall be certified as eligible to apply for adjustment assistance ... if the Secretary determines that a significant number or proportion of the workers in such workers' firm ... have become totally or partially separated, or are threatened to become totally or partially separated, and either—
    (A) that—
    (i) sales or production, or both, of such firm ... have decreased absolutely,
    (ii) imports from Mexico or Canada of articles like or directly competitive with articles produced by such firm ... have increased, and

Callebaut, which indicated that it had shifted production to other domestic locations and that it did not plan to increase its imports from Canada. *Id.* Labor then issued negative determinations regarding the Former Employees' eligibility for TAA benefits and NAFTA–TAA benefits in December 1999 and February 2000, respectively. *Id.; Notice of Determinations Regarding Eligibility to Apply for Worker Adjustment Assistance and NAFTA Transitional Adjustment Assistance,* 64 Fed.Reg. 72,690 (Dep't of Labor Dec. 28, 1999); *Notice of Determinations Regarding Eligibility to Apply for Worker Adjustment Assistance and NAFTA Transitional Adjustment Assistance,* 65 Fed. Reg. 5690 (Dep't of Labor Feb. 4, 2000).

In January 2000, a member of the Former Employees submitted a request for administrative reconsideration, alleging that thirty percent or more of the production from the Van Leer plant had been shifted or was in the process of being shifted to Canada, and that equipment was being dismantled and sent to Canada. *Fmr. Empls. I,* 177 F.Supp.2d at 1307. Labor again questioned Callebaut, which indicated that it expected to transfer some production to Canada, but had yet to do so. *Id.* Accordingly, Labor affirmed its previous negative determination. *Id.; Barry Callebaut USA, Incorporated, Van Leer Division, Jersey City, New Jersey; Notice of Negative Determination on Reconsider-*

*ation,* 65 Fed.Reg. 13,991 (Dep't of Labor Mar. 15, 2000).

The Former Employees then filed a complaint in the Court of International Trade for review of Labor's negative determination. *Fmr. Empls. I,* 177 F.Supp.2d at 1307. Labor then requested and was granted a voluntary remand. *Id.* Labor questioned Callebaut a third time, and received from the Marketing Director and former Vice President of Finance of Barry Callebaut Canada Inc., Isabelle Eysseric, a summary chart showing the allocation of the Van Leer facility's production to other Callebaut facilities during the April 2000 to January 2001 period. *Id.* at 1307–08. The chart indicated that only [a very small percentage][2] of production was transferred to Canada (*i.e.,* to St. Hyacinthe, Québec) and that all other production was transferred to other domestic facilities, namely, Pennsauken, New Jersey; Piscataway, New Jersey; and St. Albans, Vermont. *Id.* at 1308. Labor then issued a notice of negative determination upon remand. *Id.; Barry Callebaut USA, Incorporated, Van Leer Division, Jersey City, New Jersey, TA–W–37,000 and NAFTA–3402; Notice of Negative Determination on Remand,* 66 Fed.Reg. 18,116 (Dep't of Labor Apr. 5, 2001).

Alleging that Labor's investigations were all inadequate, that even a [very small percentage] shift in production to

(iii) the increase in imports under clause (ii) contributed importantly to such workers' separation or threat of separation and to the decline in the sales or production of such firm ...; or

(B) that there has been a shift in production by such workers' firm ... to Mexico or Canada of articles like or directly competitive with articles which are produced by the firm....

19 U.S.C. § 2331(a) (2000).

On August 6, 2002, § 2272 was amended and § 2331 was repealed. As amended, § 2272 contains provisions essentially identi-

cal to the repealed § 2331, except that it is not restricted to imports from and shifts in production to Mexico or Canada, and also allows certification of "secondary workers" (*i.e.,* workers whose firms are or were suppliers or downstream producers to firms whose employees were certified). Pub. Law No. 107–210, §§ 113(a)(1)(A), 123(a), 116 Stat. 933, 937, 944 (2002). Those amendments do not affect our present analysis.

**2.** Confidential figures have been replaced with bracketed characterizations in this decision.

Canada would be sufficient to satisfy the TAA requirements, and that Labor's negative determinations were not based on substantial evidence, the Former Employees returned to the Court of International Trade for review of Labor's remand decision. *Fmr. Empls. I,* 177 F.Supp.2d at 1308. The court held that Labor's negative determinations were not supported by substantial evidence because the agency had relied on unverified responses from Callebaut management and had not taken any measures to ensure the truthfulness of those responses. *Id.* at 1309–11. The court also pointed out that Callebaut's 1999 Annual Report stated that the company's management had implemented changes to increase efficiency, including transferring "higher cost Van Leer U.S. production to more cost-efficient sites in Pennsauken (USA) and St. Hyacinthe (Canada). As a result, the Van Leer factory has been closed." *Id.* at 1310. The court concluded that Callebaut's chart showing that only [a very small percentage] of production had moved to Canada was inconsistent with the 1999 Annual Report, because the chart indicated that [a greater percentage] of production had been moved to St. Albans, for example, than to Canada. *Id.* According to the court, if that [greater percentage] of production had really shifted to St. Albans rather than to St. Hyacinthe, the Annual Report would more logically have stated that production had been transferred to Pennsauken and St. Albans, rather than to Pennsauken and St. Hyacinthe. *Id.* The court then remanded to Labor to verify Callebaut's responses. *Id.* at 1311. The court also warned that it would not remand again if Labor again failed to substantiate its decision. *Id.* at 1312–13.

On remand, Labor obtained affidavits from Ms. Eysseric; John Lynch, Callebaut's Controller; and Jacquie Dragon, Callebaut's Human Resource Director. According to Eysseric's affidavit, the 1999

Annual Report had been prepared before the Van Leer plant was shut down and thus did not reflect what actually came to pass. *Fmr. Empls. II,* 240 F.Supp.2d at 1222. Moreover, according to Mr. Lynch's affidavit, although a significant amount of the Van Leer equipment was transferred to Canada, that equipment could be used for numerous purposes and therefore might not be used for the same purpose for which it had been used in the Van Leer plant. *Id.* at 1225. On the basis of that information, Labor again concluded that only [a very small percentage] of the Van Leer production had been shifted to Canada, and re-affirmed its negative determination. *Id.* at 1222; *Fourth Negative Determination.*

The Former Employees again sued in the Court of International Trade. *Fmr. Empls. II,* 240 F.Supp.2d at 1216. The court ruled that Labor had again failed to follow its remand instructions and that its decision was still not supported by substantial evidence. *Id.* at 1227. As promised, rather than remand again, the court simply ordered Labor to certify the Former Employees for the requested benefits. *Id.* at 1228.

The Secretary now appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5) and 19 U.S.C. § 2395(c).

## DISCUSSION

■ Section 2395(a) of Title 19 authorizes workers "aggrieved by a final decision of the Secretary" under § 2273 of that Title, regarding eligibility for TAA benefits, to commence a civil action in the Court of International Trade for review of that decision. Under 19 U.S.C. § 2395(b), "[t]he findings of fact by the Secretary of Labor ..., if supported by substantial evidence, shall be conclusive." The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Although substantial evidence must be more than a "mere scintilla," it is "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966). In reviewing decisions of the Court of International Trade on questions of substantial evidence, this court "step[s] into the shoes of the Court of International Trade and duplicate[s] its review." *Taiwan Semiconductor Indus. Ass'n v. Micron Tech., Inc.*, 266 F.3d 1339, 1343 (Fed. Cir.2001).

On appeal, the Secretary argues that the Court of International Trade erred in finding that Labor's determinations were not supported by substantial evidence. According to the Secretary, all of the administrative record evidence—including the chart showing the re-allocation of the Van Leer facility's production to other facilities, supporting statements, and documentary evidence—supports Labor's conclusion that the shift to Canada was only [a very small percentage]. The Secretary also argues that there is no conflict in the evidence: Callebaut's 1999 Annual Report did not purport to be an exhaustive recitation of the business operations of each Callebaut entity or facility, but was merely an incomplete forecast of future management actions, without amounts or sales volumes; in contrast, the corporate officers' statements, upon which the agency relied, described the actual facts as they occurred. Significantly, the Secretary argues, Labor has not received any information that would suggest that Callebaut's officers had

any reason to lie or that the company had any interest in the outcome of this litigation that might have been adverse to its former employees. The Secretary also argues that the evidentiary requirements in administrative proceedings are more relaxed than those in judicial proceedings, and that, contrary to the court's holding, there is no requirement that any statement upon which Labor relies must be verified in accordance with the requirements of 28 U.S.C. § 1746. Even if there were such a requirement, the Secretary contends, the affidavits of Eysseric, Lynch, and Dragon relied on by Labor each include an acknowledgement of the potential for punishment if willfully false, and would therefore satisfy § 1746. The Secretary also argues that, although Labor has a duty to investigate, the nature and extent of the investigations are within the sound discretion of the agency. Consequently, according to the Secretary, the court must defer to the agency, only remanding if the agency's technique was so marred that its finding was arbitrary or of such a nature that it could not have been based on substantial evidence.

The Secretary also contends that the Court of International Trade exceeded its statutory authority by ordering Labor to certify the Former Employees despite the fact that neither Labor nor the court itself had made any findings that the Former Employees actually met the requirements of the TAA statutes. Although 19 U.S.C. § 2395(b) permits the court to "remand the case to [the] Secretary to take further evidence," and § 2395(c) confers jurisdiction either "to affirm the action of the Secretary ... or to set such action aside, in whole or in part," the Secretary argues that there is neither any provision that allows the court, based on its impatience over Labor's purported failure to conduct an "adequate" investigation, to then order Labor to "certify the employees" for the

requested benefits, nor any provision that authorizes "certification by default." According to the Secretary, courts cannot exercise authority beyond their mandate and there is no constitutional or statutory authority that empowers the Court of International Trade to order Labor to certify the Former Employees when no finding has been made that the statutory requirements for TAA or NAFTA–TAA benefits have been met. The Secretary points out that 28 U.S.C. § 2643(c)(2), which provides that "[t]he Court of International Trade may not grant an injunction or issue a writ of mandamus in any civil action commenced to review any final determination of the Secretary of Labor under section 223 of the Trade Act of 1974 [, 19 U.S.C. § 2273]," forbids the Court of International Trade's issuance of a writ of mandamus in any civil action commenced to review any final determination of the Secretary of Labor.

The Secretary argues that although the court cited *Former Employees of Hawkins Oil & Gas, Inc. v. United States Secretary of Labor*, 814 F.Supp. 1111, 17 Ct. Int'l Trade 126 (1993), and *Former Employees of General Electric Corp. v. United States Department of Labor*, 14 Ct. Int'l Trade 608 (1990), in which the Court of International Trade previously ordered Labor to certify employees, the government did not appeal those decisions, and this court has therefore never opined on the legality of that action. The Secretary asserts that a plain reading of the statute shows that Congress has authorized the award of TAA benefits only when the Secretary certifies that the statutory criteria set forth in 19 U.S.C. § 2272 have been met, but no findings have been made in this case that would support certification. The Secretary contends that this is not a case in which other available data contradict the data upon which Labor relies and in which, if the trial court credits the other data, it implicitly finds that the eligibility criteria

have been met. Absent such evidence, the Secretary argues, the court has ordered Labor to act in a manner that is contrary to the purpose of the statute, since it is the aggrieved workers, not the agency, who bear the burden of proof.

The Former Employees respond that the information upon which Labor based its first two decisions reflected Callebaut's plans as they existed at the time of its acquisition of Van Leer in 1998, not the company's plans or factual circumstances as they actually existed at the time of Labor's communications with Callebaut between October 1999 and January 2000. The chart on which Labor relied as its "most important" piece of evidence remains unverified, according to the Former Employees, and provides no insight as to how the figures included therein were derived. The Former Employees allege that the chart also conflicts with Callebaut's 1999 Annual Report, which indicated that the subject plant's production had moved to "Pennsauken (USA) and St. Hyacinthe (Canada)," suggesting a greater shift to Canada than the chart indicates, because if only [a very small percentage] of production had been shifted from Van Leer to Canada as the chart indicates, it would seem likely that the Annual Report would have listed another U.S. plant instead of or in addition to St. Hyacinthe. The Callebaut officials' unsworn statements neither adequately explain nor support the chart, according to the Former Employees, but instead provide unverifiable general statements without evidentiary foundation.

The Former Employees also argue that, although Callebaut officials had no apparent reason to lie, they gave contradictory and admittedly outdated information to Labor during the investigation, and under the circumstances it was appropriate and within the court's authority to order Labor to certify the Former Employees as eligible for adjustment assistance. If Labor

were correct that the Court of International Trade could do nothing other than affirm or remand, the Former Employees assert, the court would be powerless to do anything more than order a potentially endless series of futile remands, no matter how many times Labor failed to perform an adequate investigation, and that would be an "absurd result."

■ We agree with the Secretary that Labor's *Fourth Negative Determination* was supported by substantial evidence consisting of the summary chart and affidavits supplied by Eysseric, Lynch, and Dragon. Labor based its decision on evidence that it deemed creditworthy and that was not contradicted by any other evidence. We disagree with the Former Employees' argument that Callebaut's 1999 Annual Report is inconsistent with the statements and summary chart provided by Callebaut. Although that Annual Report states that "[a]n example of efficiency improvements ... is the transfer of the higher cost Van Leer U.S. production to more cost-efficient sites in Pennsauken (USA) and St. Hyacinthe (Canada)," there is no indication that the plants listed in the Annual Report are the only plants to which Van Leer production was transferred. Moreover, the Annual Report does not state that any particular percentage of production was transferred to St. Hyacinthe, let alone that the actual percentage was greater than [a very small percentage]. The most that can be surmised from the quoted portion of the Annual Report is that the Pennsauken and St. Hyacinthe plants were "more cost-efficient" than the Van Leer plant was, and that the higher cost production was accordingly transferred. That report thus does not vitiate the substantial evidence consisting of the summary chart.

Moreover, there is nothing inherently implausible about the explanation provided by the Callebaut officers for the differences between the Annual Report and the summary chart, and we accordingly see no basis for discounting the evidentiary value of the summary chart relied on by Labor. Finally, the Eysseric, Lynch, and Dragon affidavits submitted to Labor each include the following statement: "I certify that the information set forth herein is true and correct to the best of my knowledge, information and belief. I am aware that if any of the information contained herein is willfully false, I am subject to punishment." We agree with the Secretary that those affidavits were sufficiently trustworthy to constitute substantial evidence as well.

■ In view of our holding that Labor's *Fourth Negative Determination* was supported by substantial evidence, we consider the question of the Court of International Trade's authority to order Labor to certify the Former Employees for the requested benefits to be moot, and will not discuss it further.

## CONCLUSION

Because Labor's *Fourth Negative Determination* was supported by substantial evidence, the decision of the Court of International Trade ordering Labor to certify the Former Employees for TAA and NAFTA–TAA benefits is

*REVERSED.*