SLIP OP. 04-130

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: RICHARD K. EATON, JUDGE

_____
                                          :
FORMER EMPLOYEES OF ERICSSON, INC.,       :
                                          :
               PLAINTIFFS,                :
                                          :
               v.                         :     CONSOL. COURT NO. 02-00809
                                          :     PUBLIC VERSION
UNITED STATES SECRETARY OF LABOR,         :
                                          :
               DEFENDANT.                 :
_____ :

[United States Department of Labor's negative determination remanded a second time]


Dated: October 13, 2004


     *Katten Muchin Zavis Rosenman* (*Michael E. Roll*), *Elena Paraskevas-Thadani*, of counsel, for Plaintiffs.

     *Peter D. Keisler*, Assistant Attorney General, Civil Division, United States Department of Justice; *David M. Cohen*, Director, Civil Division, Commercial Litigation Branch; *Jeanne E. Davidson*, Assistant Director, International Trade Section, Civil Division, Commercial Litigation Branch (*Michael D. Panzera*); *Peter Nessen*, Office of the Solicitor, United States Department of Labor, of counsel, for Defendant.


OPINION AND ORDER


BACKGROUND

EATON, *Judge*: This matter is before the court following voluntary remand to the United States

Department of Labor ("Labor"). The former employees of Ericsson, Inc. ("Plaintiffs") are

software engineers who were employed by Ericsson, Inc. at its Brea, California facility. *See* Pet. for NAFTA-Trade Adjustment Assistance ("NAFTA-TAA"), Pub. Admin. R. at 2 (Aug. 1, 2002) (the "Petition").[1]   Plaintiffs designed, wrote code for, and tested software programs that were installed in cellular telephone base stations, enabling them to route cellular telephone calls. *See* Notice of Negative Determination on Reconsideration on Remand, Conf. Supp. Admin. R. at 38 (Jan. 14, 2004) ("Negative Determination on Remand").   Plaintiffs lost their jobs when Ericsson transferred their work to Ericsson's facility located in Canada in August of 2002. *See* Petition, Pub. Admin. R. at 2.

On August 1, 2002, Plaintiffs filed a Petition with Labor for NAFTA-TAA certification pursuant to 19 U.S.C. § 2331(a)(1) (2000).[2]  On September 24, 2002, Labor determined that

---

[1]       The documents in both the public and confidential versions of the Administrative and Supplemental Administrative Records in this case have been consecutively numbered.  Thus, citations are to the page numbers within each record as a whole, and not to page numbers within specific documents contained in each record.

[2]       This statute provides:

> A group of workers . . . shall be certified as eligible to apply for adjustment assistance under this subpart . . . if [Labor] determines that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated, and either—
>
> (A) that—
>
> > (i) the sales or production, or both, of such firm or subdivision have decreased absolutely,
> >
> > (ii) imports from Mexico or Canada of articles like or directly

Plaintiffs were not eligible for NAFTA-TAA assistance because they did not produce an "article" within the meaning of 19 U.S.C. § 2331. *See* Negative Determination Regarding Eligibility to Apply for NAFTA-TAA, Conf. Admin. R. at 20 ("Negative Determination"). "The investigation revealed that the workers of the subject firm do not produce an article. . . . The Department of Labor has consistently determined that the performance of services does not constitute production of an article." *Id*. at 20 (emphasis added). On December 9, 2002, Plaintiffs commenced suit in this Court seeking judicial review of Labor's September 24, 2002, decision. *See Former Employees of Ericsson, Inc. v. United States Sec'y of Labor*, Ct. No. 02-00809.[3]

competitive with articles produced by such firm or subdivision have increased, and

(iii) the increase in imports under clause (ii) contributed importantly to such workers' separation or threat of separation and to the decline in the sales or production of such firm or subdivision; or

(B) that there has been a shift in production by such workers' firm or subdivision to Mexico or Canada of *articles* like or directly competitive with *articles* which are *produced* by the firm or subdivision.

19 U.S.C. § 2331(a)(1) (emphasis added).

[3] Following its denial of NAFTA-TAA certification for Plaintiffs, Labor also published a negative determination for TAA benefits. *See* Notice of Determinations Regarding Eligibility To Apply for Worker Adjustment Assistance, 68 Fed. Reg. 49,522 (Labor Aug. 18, 2003); *see also* 19 U.S.C. § 2331(c)(2) (requiring Labor to consider petitions filed under NAFTA-TAA under TAA if the NAFTA-TAA petitions are denied). On June 18, 2003, Plaintiffs filed suit in this Court challenging the TAA denial. *Former Employees of Ericsson, Inc. v. United States Sec'y of Labor*, Ct. No. 03-00389. The court granted Plaintiffs' consent motion to consolidate the two cases on August 20, 2003.

On September 5, 2003, Labor filed a motion requesting a voluntary remand to conduct further investigation, stating: "Specifically, Labor would like to obtain additional information as to whether the workers' firm produced an article during plaintiffs' employment with Ericsson. This information would permit Labor to assess more completely whether plaintiffs are eligible for TAA and/or NAFTA-TAA benefits."  Def.'s Consent Mot. for Voluntary Remand at 3–4 (Sept. 5, 2003) (emphasis added).  The court granted Labor's motion on September 11, 2003.

After completing its remand investigation, Labor concluded, for a second time, that Plaintiffs were not eligible for NAFTA-TAA benefits:

> The remand investigation consisted of independent research and analysis of software as a commodity and multiple requests [for] additional information from the [Plaintiffs] and the subject company regarding the functions of the subject worker group. . . . While the Department considers workers who are engaged in the mass copying of software and manufacturing of the medium upon which the software is stored . . . to be production workers, the Department does not consider the design and development of the software itself to be production and, therefore, does not consider software designers and developers to be production workers. . . .

Negative Determination on Remand, Pub. Supp. Admin. R. at 38–39.  Plaintiffs ask the court to overturn Labor's negative remand determination, and to rule that Plaintiffs are eligible to be certified for NAFTA-TAA benefits under 19 U.S.C. § 2331(a)(1).

### STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1581(d)(1) (2000), the Court of International Trade has exclusive jurisdiction over any action commenced to review a final determination of the Secretary of

Labor, including denial of trade adjustment assistance. *See id.*; *see also Former Employees of*

*Alcatel Telecomms. Cable v. Herman*, 24 CIT 655, 658 (2000) (not reported in the Federal

Supplement) ("Cases contesting the denial of trade adjustment assistance are generally filed

under [§ 1581(d)] . . . ."). Judicial review of a Labor determination denying certification of

eligibility for trade adjustment assistance benefits is confined to the administrative record. *See*

28 U.S.C. § 2640(c) (1994); *see also Int'l Union v. Reich*, 22 CIT 712, 716, 20 F. Supp. 2d 1288,

1292 (1998). The Trade Act of 1974 ("Trade Act")[4] contains a provision for judicial review of

the Secretary of Labor's eligibility determination. *See* 19 U.S.C. § 2395(a) (2003).[5] Labor's

determination must be sustained if its findings of fact are supported by substantial evidence on

the record and otherwise in accordance with law. 19 U.S.C. § 2395(b). "Substantial evidence is

---

[4]     It should be noted that Congress repealed 19 U.S.C. § 2331 on August 6, 2002, placing the § 2331 NAFTA-TAA program into a new trade adjustment assistance plan under the newly-revised version of the Trade Act of 1974, as amended, in 19 U.S.C. § 2272. The 1974 Act was renamed the Trade Act of 2002. *See* Pub. L. No. 107-210, §§ 113(a)(1)(A), 123(a), 116 Stat. 933, 944 (2002). For this reason, the current § 2395 makes an internal reference to § 2272, not § 2331. However, Plaintiffs' application and claim for NAFTA-TAA benefits antedates the November 4, 2002, effective date. Therefore § 2331 governs Plaintiffs' claim.

[5]     This statute provides in relevant part:

> (a) Petition for review; time and place of filing.
>
>> A worker [or] group of workers . . . aggrieved by a final determination of the Secretary of Labor under section 2273 of this title . . . may, within sixty days after notice of such determination, commence a civil action in the United States Court of International Trade for review of such determination. . . .

19 U.S.C. § 2395(a).

something more than a 'mere scintilla,' and must be enough reasonably to support a conclusion."

*Ceramica Regiomontana, S.A. v. United States*, 10 CIT 399, 405, 636 F. Supp. 961, 966 (1986),

*aff'd*, 810 F.2d 1137 (Fed. Cir. 1987) (citations omitted); *see also Former Employees of Gen.*

*Elec. Corp. v. United States*, 14 CIT 608, 611 (1990) (not reported in the Federal Supplement).

"In addition, the 'rulings made on the basis of those findings [must] be in accordance with the

statute and not be arbitrary and capricious, and for this purpose the law requires a showing of

reasoned analysis.'" *Former Employees of Rohm & Hass Co. v. Chao*, 27 CIT __, __, 246 F.

Supp.2d 1339, 1346 (2003) (quoting *Int'l Union v. Marshall*, 584 F.2d 390, 396 n.26 (D.C. Cir.

1978)).


## DISCUSSION

Both Plaintiffs and Labor agree that the only substantive dispute is whether the work

Plaintiffs performed for Ericsson constitutes production of an article. *See* Pls.' Resp. to Dep't of

Labor's Negative Remand Determination ("Pls.' Resp.") at 5; *see also* Def.'s Mem. in Opp'n to

Pls.' Comments Regarding Def.'s Remand Determination ("Def.'s Mem.") at 2. In this regard,

the United States Government, on behalf of Labor, maintains that (1) the design and development

of software does not constitute the production of an article[6] for purposes of NAFTA-TAA

---

[6] In its Negative Determination on Remand, Labor gives one reason and cites two factors for its conclusion that the design and development of software does not constitute production of an article. First, Labor relies on its interpretation of United States customs law and, in particular, the Harmonized Tariff Schedule of the United States ("HTSUS"). Under Labor's interpretation, software is not a tangible commodity under the HTSUS, and thus the development of software is "not the type of employment work product[] that customs officials inspect and that the TAA program was generally designed to address." Negative Determination on Remand, Pub. Supp. Admin. R. at 40. Second, the two factors cited by Labor in reaching its decision are that the software was (1) "not sold as manufactured products to the general public,"

certification; (2) Labor's determination is supported by substantial evidence on the record, and its

reliance on statements made by Ericsson's Human Resources Manager is in accordance with law;

and (3) Labor's reliance upon the treatment of computer software under customs law as

interpreted by the Bureau of Customs and Border Protection[7] and the United States International

Trade Commission is proper and should be accorded deference under *Chevron U.S.A. Inc. v. Nat.*

*Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984).

For their part, Plaintiffs argue that (1) the work performed for Ericsson constitutes the

production of an article within the meaning of 19 U.S.C. § 2331(a), and (2) Labor erred in

adopting the unsupported legal conclusions of Ericsson's Human Resources Manager.  While the

legal contentions of the parties must be addressed in due course, it is apparent that the record has

not been sufficiently developed for adequate judicial review.  Thus, the court will defer until after

remand all questions of law, except for those dealing with statements made by Ericsson's Human

Resources Manager.

Labor based its finding that Plaintiffs did not make an article, and were therefore not

production workers, on information it gathered in its initial investigation and its investigation on

remand.  Labor's initial investigation consisted of (1) consideration of the Petition for NAFTA-

and (2) "not sold as a component to an article that available to the general public." *Id*. at 39.

[7]       See *Former Employees of Murray Engineering Inc. v. Chao*, 28 CIT __, slip op.
04-45 (May 4, 2004), in which the court held that Labor's interpretation of customs law,
specifically the HTSUS, should not be accorded deference because Labor does not have
delegated authority to enforce or administer the HTSUS. *See id*. at 6–8.

TAA benefits filed by Ericsson's Human Resources Manager, which stated that Plaintiffs lost their jobs due to Ericsson's shift of production to Mexico or Canada, *see* Pub. Admin. R. at 2; (2) a confidential request for data, which was completed by Ericsson's Human Resources Manager only up to the point of declaring that Plaintiffs "<u>do not produce a product</u>!", Conf. Admin. R. at 9 (emphasis in original); (3) "anecdotal information" supplied by Ericsson's Human Resources Manager in a telephone call, in which she stated that Plaintiffs "do not manufacture a product, but do design the necessary software," *id*. at 10; and (4) a six-question inquiry dated August 27, 2002, answered by Ericsson's Human Resources Manager. *See id*. at 17–18. Labor justified this truncated investigation on the grounds that, "based on the facts in the case, a full investigation would serve no purpose since workers do not produce an article as required by the Act." Conf. Admin. R. at 21–22.

On September 5, 2003, however, following commencement of Plaintiffs' action in this Court, Labor sought a voluntary remand "to obtain additional information as to whether the workers' firm produced an article . . . ." Def.'s Consent Mot. for Voluntary Remand at 3–4 (Sept. 5, 2003) (emphasis added). The entire factual investigation on remand consisted of (1) the mailing of a letter to Ericsson's Human Resources Manager on October 7, 2003, which she declined to answer; (2) a telephone conversation between a Labor employee and Ericsson's Human Resources Manager on October 17, 2003; (3) a telephone conversation between a Labor Department employee and one of the Plaintiffs; and (4) various submissions by Plaintiffs, and their attorneys, explaining their work. *See* List of Documents Constituting Conf. Supp. Admin. R. Labor characterized its investigation upon remand as "multiple requests [for] additional

information from [Plaintiffs] and the subject company regarding the functions of the subject worker group." Negative Determination on Remand, Pub. Supp. Admin. R. at 38.

It is well-settled that the plaintiffs in a NAFTA-TAA case are entitled to an adequate investigation of their claims. As this Court has stated, "While Labor has 'considerable discretion' in conducting its investigation of TAA claims, 'there exists a threshold requirement of reasonable inquiry. Investigations that fall below this threshold cannot constitute substantial evidence upon which a determination can be affirmed.'" *Former Employees of Sun Apparel of Tex. v. United States,* 28 CIT __, __, slip op. 04-106 at 15 (Aug. 20, 2004) (internal citation omitted).

In two recent opinions, the Court of Appeals for the Federal Circuit has provided guidance as to the threshold required for an adequate investigation. In *Former Employees of Marathon Ashland Pipe Line LLC v. Chao*, 370 F.3d 1375 (Fed. Cir. 2004), Labor's investigation, which consisted of making inquiries of both Marathon management and of the employees to determine exactly what functions they performed, revealed that there was substantial agreement as to the nature of the tasks performed by the Marathon employees. Thus, the only question for the Federal Circuit was whether these tasks fell within the legal definition of the word "production." The Court found that, "[w]hile the definition of the statutory term 'production' is a question of law, the question whether particular employees are engaged in 'production' within that definition is factual." *Id*. at 1381. The Court held that because there was substantial agreement with respect to the facts, Labor's determination was supported by

substantial evidence.

In *Former Employees of Barry Callebaut v. Chao*, 357 F.3d 1377 (Fed. Cir. 2004), the Federal Circuit examined the adequacy of an investigation concerning the allocation of production activities, i.e., an investigation seeking to determine at which location work was actually performed. In *Callebaut*, unlike *Marathon*, there was not substantial agreement as to the facts. In addition to review of completed questionnaire responses,[8] Labor's investigation in *Callebaut* consisted of (1) questioning the employer's management on three occasions; (2) obtaining a chart from the employer's Marketing Director and former Director of Finance showing the allocation of production to each facility; and (3) obtaining affidavits from three members of the employer's management addressing production allocation matters and offering an explanation for seeming inconsistencies. Based on the variety and formality of the inquiries and responses in *Callebaut*, the Court found Labor's investigation into the allocation of production activities to be adequate. *Id*. at 1383.

The investigation here is distinguishable from those conducted in *Marathon* and *Callebaut*. First, unlike in *Marathon,* here there is no substantial agreement as to the facts of Plaintiffs' employment. That is, while there is agreement with respect to Plaintiffs' day-to-day activities, there is no agreement as to how their work was utilized by Ericsson. Moreover, given that Ericsson's Human Resources Manager, for the most part, either did not respond to, or did

---

[8]     For a complete description of Labor's investigation in this case, see *Former Employees of Barry Callebaut v. Herman*, 25 CIT 1226, 177 F. Supp. 2d 1304 (2001), and 26 CIT __, 240 F. Supp. 2d 1214 (2002).

not complete Labor's questionnaires, Labor's investigation here, unlike that in *Marathon*, cannot

be said to provide substantial evidence for Labor's findings.  Second, given the evident

disagreement with respect to the facts, the nature and extent of the investigation in this case falls

short of the more thorough investigation found adequate in *Callebaut*.  *See, e.g.*, *Former*

*Employees of Sun Apparel*, slip op. 04-106 at 18 (investigation in which Human Resources

Manager failed to complete entire section of Labor questionnaire deemed incomplete and

inadequate); *Former Employees of Champion Aviation Prods. v. Herman*, 23 CIT 349, 353

(1999) (not reported in Federal Supplement) (remanding to Labor where "record lacks adequate

factual development").


A review of the record demonstrates that the instant investigation was insufficient in

several respects.  First, while it is agreed that Plaintiffs designed, wrote code for, and tested

software programs, there is disagreement over how the programs were used.  In its Negative

Determination on Remand, Labor stated:

> The remand investigation revealed that the petitioning workers
> designed and programmed software which enabled base stations
> (routing equipment) to properly route cellular phone messages
> pursuant to customers' telecommunication needs.  *The software*
> *was not sold as manufactured products to the general public or*
> *sold as a component to an article that is available to the general*
> *public.*

Negative Determination on Remand, Pub. Supp. Admin. R. at 38–39 (emphasis added).

However, Labor cites no evidence to support its statement that "[t]he software was not sold as

manufactured products to the general public," and nothing in the record corroborates this

conclusion.  Rather, in a letter dated December 10, 2003, Plaintiffs' counsel responded to

Labor's request for additional information pursuant to remand by stating, "With respect to your question regarding whether Ericsson sold any of the software products our clients developed, the answer to your question is 'yes.'" *Id*. at 30.  Plaintiffs' counsel then identified several customers to whom Plaintiffs believed the software had been sold, directed Labor to Ericsson's Web site for further information about Ericsson's sales contracts, and urged Labor to confirm the Plaintiffs' sales information with Ericsson.  *See id*.  Plaintiffs further pointed out that "Ericsson represents on its own website that it sells the software produced by Plaintiffs, along with infrastructure systems and other necessary products, to mobile phone companies abroad."  Pls.' Reply [to] Dep't of Labor's Negative Remand Determination Denying Pls. Certification under NAFTA-TAA ("Pls.' Reply") at 16 (footnote omitted).  There is no indication that Labor made any effort to investigate these matters.

Second, Plaintiffs dispute Labor's finding that the "software [Plaintiffs developed] was not sold as a component to an article that is available to the general public," on the grounds that this contention is "completely unsupported by the record."  Pls.' Resp. at 3 n.1 (internal citation omitted).  Indeed, an examination of the record suggests that Labor's finding is not only unsupported by substantial evidence, but is rather contradicted by the scant evidence that is present in the assembled material.  First, the answers provided by Ericsson's Human Resources Manager in response to Labor's questions indicate that the software was a component part of the base stations of which Ericsson was a global seller.  In answer to the six-question inquiry dated August 27, 2002, Ericsson's Human Resources Manager stated that (1) "Ericsson is a global supplier of mobile communications systems and solutions," and (2) Plaintiffs were engaged in

employment that was "Related to the Production – These workers developed software components for a CDMA base station controller which routes cellular phone calls." Conf. Admin. R. at 17 (emphasis in original). The uncontradicted declaration of one of the Plaintiffs confirms that the software was installed in the base stations:

> Each of these [software] products w[as] part of cellular telephone infrastructure system. Specifically, they were part of a CDMA2000 network which included everything necessary to provide wireless telephone and data communications services. CDMA2000 is a type of cellular telephone network (CDMA stands for Code Division Multiple Access) and consists of multiple elements such as radio transmission devices, network cables, hardware nodes, and software programs.
>
> My department was responsible for developing software for [] one of the hardware nodes – specifically a base station controller (BSC) node. BSC nodes, which are somewhat analogous to a computer, are installed at certain geographical locations to consolidate network traffic and to provide certain network management functions. . . . My responsibilities included design of software programs so as to secure proper interaction with other software programs of a CDMA2000 network, writing the code, and testing it. Just as a personal computer is inoperable without software, a BSC node also would be inoperable without the software we designed and created.

Declaration by Dmitri Okhotski, Pub. Supp. Admin. R. at 9. These statements tend to call into question Labor's finding that the software was not sold as a component of an article. Indeed, they give some support to Plaintiffs' assertion that "the software programs that Plaintiffs produced meet [the definition of production] because they were incorporated into the tangible commodity sold by Ericsson to third parties," Pls.' Resp. at 9.

Next, there is insufficient evidence to justify Labor's conclusion that "[the initial]

investigation also revealed that the subject facility did not support an affiliated facility covered by an existing certification." Pub. Supp. Admin. R. at 38. Labor's finding was apparently based on notes taken by a Labor employee during a telephone conversation with Ericsson's Human Resources Manager, in which the manager stated that "the Brea, California facility was not connected to or supported [by] another facility including Base Station and Systems Development, Durham, North Carolina, and the facility in Woodbury, New York." Conf. Supp. Admin. R. at 6. This statement, however, seems to be at odds with the Human Resources Manager's August 27, 2002, submission:

> [Question] 6. Please briefly explain the circumstances relating to layoffs that have taken place in the last year at your facility at Brea, California.
>
> [Answer] The Brea facility develops software applications *for other Ericsson units*. There ha[ve] been layoffs during the last year related to slower business and reduced budgets. The layoff of the CDMA team on August 16, 2002 is the first layoff in Brea resulting from work being transferred to Montreal, Canada[.]

Conf. Admin. R. at 18 (emphasis added). Although it may be that the facilities where the software was utilized were not "covered by an existing certification," the proof apparently relied upon by Labor to justify the conclusion that the subject facility did not support any other facility, does not amount to substantial evidence.

Finally, Labor's apparent reliance on the legal conclusions of Ericsson's Human Resources Manager as the factual basis for its negative determination is not in accordance with law. "An unsupported conclusion simply does not suffice as a proper investigation." *Former Employees of Alcatel Telecomms. Cable v. Herman*, 24 CIT 655, 665 (2000) (not reported in the

Federal Supplement). This is particularly true of the August 30, 2002, submission of Ericsson's Human Resources Manager, in which she stated her conclusion that Plaintiffs "do not produce a product!", Conf. Admin. R. at 9 (emphasis in original), then marked as "not applicable" and declined to answer questions seeking data regarding sales of produced articles, employment of production workers, employment of salaried workers, and shifting of production to Canada. *See id.* at 9, 11–12. Thus, while Ericsson's Human Resources Manager may have concluded that Plaintiffs "do not produce a product," no factual basis is provided for her conclusion. As previously noted, the Federal Circuit has found that, "[w]hile the definition of the statutory term 'production' is a question of law, the question whether particular employees are engaged in 'production' within that definition is factual." *Marathon*, 370 F.3d at 1381. Therefore, rather than relying on Ericsson's Human Resources Manager's essentially legal conclusion, Labor should have required her to complete the questionnaire so that it could determine precisely what tasks were performed by Plaintiffs, and the use to which their output was employed. Had Labor sought this additional information from Ericsson's Human Resources Manager then, rather than relying on her conclusions, it would then have been in a position to determine, based on the facts of their employment, whether Plaintiffs were engaged in "production" according to a lawful definition of that term.

## CONCLUSION

Because Labor failed to adequately investigate Plaintiffs' claims, its Remand Results are not supported by substantial evidence on the record. In addition, any findings based solely on the essentially legal conclusion of Ericsson's Human Resources Manager are not in accordance with

law. On remand, Labor shall conduct a reasonable investigation into Plaintiffs' claims. Should Labor continue to find Plaintiffs ineligible for NAFTA-TAA benefits, it shall: (1) reconsider its finding that Plaintiffs were not production workers by conducting an investigation that does not impermissibly rely on the conclusory statements of an Ericsson employee; (2) state with specificity any reasons, other than its reliance on the HTSUS, for reaching its determination, and fully explain those reasons; (3) determine whether the software written by Plaintiffs was a component of any product sold by Ericsson to third parties; (4) if so, determine whether such products would have performed the tasks for which they were designed absent the incorporation of the software; (5) explain why Labor chose to view the software in isolation, rather than as a component of the product into which it was incorporated; (6) determine if the software had any use other than as a component of the routers; (7) determine the location at which the routers were assembled; (8) determine whether the software was sold to any third parties without having been incorporated into any Ericsson product; (9) if so, explain the manner in which the software was transmitted to such purchasers (i.e., by disk or otherwise); (10) explain why "sold to the general public" is an important consideration; (11) fully explain its conclusion that "such products are not the type of employment work products that customs officials inspect and that the TAA program was generally designed to address"; (12) state with specificity its reasons for finding that the facility at which Plaintiffs were employed did not "support" any other facility; and (13) with respect to each finding made in its determination, state with specificity the facts relied upon in reaching such finding, including specific reference to documents in the record.

Remand results are due within ninety days of the date of this opinion, comments are due

thirty days thereafter, and replies to such comments eleven days from their filing.  Neither

comments nor replies to such comments shall exceed thirty pages in length.


                                                          /s/ Richard K. Eaton
                                                          Richard K. Eaton

Dated: October 13, 2004
        New York, New York